**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **AURELIO ROY ROMERO,** | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **No. CIV-05-1207-HE** |
| **ERIC FRANKLIN, Warden,** | ) | |
| **Respondent.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254, seeking a writ of habeas corpus. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Respondent has filed a response to the petition [Doc. No. 13] and the state court trial transcripts ("Tr."). Petitioner has filed a reply to the response [Doc. No. 17], and thus, the matter is at issue. For the reasons set forth below, it is recommended that the petition be denied.

Petitioner is challenging his convictions of five counts of distribution of a controlled dangerous substance after a jury trial held April 20, 2004. District Court of Stephens County, Case No. CF-1999-428.[1] Petitioner was sentenced to thirty years imprisonment on each count, and the sentences were ordered to be served consecutively.

[1]In Case No. CF-1999-428, Petitioner was convicted of distributing methamphetamine on five separate dates: December 3, 4, 6, 10 and 21, 1999. In a related case, Petitioner was convicted of other drug related offenses that occurred on December 22, 1999, Case No. CF-1999-427, District Court of Stephens County; Petitioner is challenging his conviction in this case in a separate pending habeas action in this Court. *Martin Roy Romero v. Franklin*, Case No. CIV-05-1142-HE. On December 23, 1999, authorities issued a warrant for Petitioner's arrest on the charges in Case No. CF-1999-428, and he was not arrested until September 2003. Tr. at 72.

Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals (OCCA), alleging in a single claim that certain comments made by the prosecutor during closing argument deprived him of a fair trial and resulted in an excessive sentence. Response, Ex. 1. In a summary opinion dated August 26, 2005, the OCCA affirmed Petitioner's convictions and sentences, finding that Petitioner was not denied a fair trial by prosecutorial misconduct and that his sentence was not excessive. Response, Ex. 3. Petitioner states that at the time of filing his federal habeas petition, he had filed no applications for post-conviction relief. Petition at 2-3.[2]

Petitioner now seeks federal habeas relief, raising a single claim based on prosecutorial misconduct. Petition at 5. Respondent states that Petitioner has exhausted his state court remedies through his direct appeal and the petition is timely. Respondent contends that the OCCA's decision as to Petitioner's claim of prosecutorial misconduct is not contrary to or an unreasonable application of federal law.

Discussion

I. Standard Governing Petitions For Habeas Corpus

For claims that have been adjudicated by the OCCA, this Court may grant a writ of habeas corpus relief only if that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an

[2]Although Petitioner indicated that he had filed no post-conviction applications, he added a notation "but I will file a PCR A.S.A.P. soon in a lower court." Petition at 2. In his reply to the response, Petitioner indicates that he "do[es] wish at some point ask for a stay, so that I can file a PCR[]"; however, he has not sought leave to do so and there is no indication in the record that he has filed or sought leave to file an amended petition. Petitioner's Reply at 1.

unreasonable determination of the facts in light of evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1) and (2).

A state court's decision is contrary to clearly established federal law if it applies a rule that contradicts the law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. at 405. Further, a state prisoner seeking habeas relief based on alleged erroneous factual determinations must overcome by clear and convincing evidence the presumption of correctness afforded state court factual findings. *See* 28 U.S.C. § 2254(e)(1); *Smith v. Mullin*, 379 F.3d 919, 924-25 (10th Cir. 2004).

II. Prosecutorial Misconduct

In his sole ground for relief, Petitioner alleges that "prosecutorial improprieties during closing argument deprived Mr. Romero of due process of law and resulted in an excessive sentence." Petition at 5. Petitioner does not specify the comments he is challenging nor does he cite to specific portions of the trial transcript to support his claim of prosecutorial misconduct. However, Petitioner asserts in his petition that he exhausted his claim of prosecutorial misconduct on direct appeal, and it is therefore assumed that Petitioner is relying on the same facts that he relied upon in his direct

appeal.[3] On direct appeal, Petitioner argued that during closing argument the prosecutor incited societal alarm by calling him improper names and arguing facts not in evidence, resulting in excessive sentences in violation of his due process rights. Response, Ex. A at 3. As previously stated, the OCCA, reviewing only for plain error, found that Petitioner was not denied a fair trial by prosecutorial misconduct.

Petitioner's allegation of prosecutorial misconduct does not implicate a specific constitutional right and is therefore reviewed only for a violation of due process. *See Patton v. Mullin*, 425 F.3d 788, 811 (10th Cir. 2005), *cert. denied*, 126 S.Ct. 2327 (2006), (citing *Darden v. Wainwright*, 477 U.S. 168 (1986)). "[N]ot every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a failure to observe that fundamental fairness essential to the very concept of justice." *Patton*, 425 F.3d at 811 (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). To be entitled to habeas relief based on a prosecutorial misconduct claim, a petitioner must establish that the prosecution's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Patton*, 425 F.3d at 811 (citing *Donnelly*, 416 U.S. at 643). Such a determination may be made only after "tak[ing] notice of all the surrounding circumstances, including the strength of the state's case." *Coleman v. Brown*, 802 F.2d 1227, 1237 (10th Cir. 1986). Any cautionary steps, such as instructions to the jury, offered by the court to counteract improper remarks may also be

---

[3]Petitioner also states that he is "actually and factually innocent of these charges" and that appellate counsel was ineffective for only raising one proposition of error on direct appeal. However, Petitioner recognizes that neither of these of these allegations has been raised in the state courts and that such claims therefore may not be raised in his habeas petition. Petition at 5. Accordingly, the petition has not been construed as raising claims other than prosecutorial misconduct.

considered. *Darden*, 477 U.S. at 182. Additionally, defense counsel's failure to object to the comments, while not dispositive, is also relevant to a fundamental fairness analysis. *See Walker v. Gibson*, 228 F.3d 1217, 1241 (10th Cir. 2000); *Trice v. Ward*, 196 F.3d 1151, 1167 (10th Cir. 1999). Ultimately, the Court considers the jury's ability to judge the evidence in light of the prosecutor's conduct. *Tillman v. Cook*, 215 F.3d 1116, 1129 (10th Cir. 2000).

A. Inciting Societal Alarm

On direct appeal, Petitioner first claimed that during closing argument the prosecutor inflamed the jury by engaging in name-calling, specifically, by referring to Petitioner as the virtual "Wal-Mart" store for methamphetamine because "just like Wal-Mart, constant supplier, rarely out of the products . . . "[4] Response, Ex. 1 at 4. Petitioner argued that the prosecutor's comparison of Petitioner's business with Wal-Mart was contrary to (1) the testimony of certain State's witnesses who testified that on one of the five occasions that Petitioner provided methamphetamine to confidential informant Bobby Burton, he had to first leave his house to pick up the illegal drug; (2) the fact the Burton called to make sure the methamphetamine was available at Petitioner's home prior to going there to buy the drugs; and (3) authorities conducting a search of Petitioner's residence only found residue of methamphetamine. *Id.* (citing Tr. at 123).

[4]The full statement was as follows:

> [I]n the methamphetamine world, Martin Romero was the Wal-Mart. If, as you heard, one needed methamphetamine, what did you do? You went to Martin's house. It was there. Just like Wal-Mart, constant supplier, rarely out of the products in which you want. Same here. Not only rarely, we have no evidence that it was ever empty of methamphetamine at Martin Romero's business.

Tr. at 117.

Reviewing these statements for plain error only, the OCCA found that the prosecutor's comment that "[Petitioner] was a 'Wal-Mart' of the methamphetamine world was a reasonable inference from the evidence." Response, Ex. 3 at 2 (listing other OCCA cases upholding metaphorical comments based on the evidence).

The Tenth Circuit has held that "even '[a]n improper appeal to societal alarm typically does not amount to a denial of due process.'" *Duckett v. Mullin*, 306 F.3d 982, 990 (10th Cir. 2002) (quoting *Jones v. Gibson*, 206 F.3d 946, 959 (10th Cir. 2000)); *see also Brecheen v. Reynolds*, 41 F.3d 1343, 1356 (10th Cir. 1994) (holding "improper appeals to societal alarm" and requests for "vengeance for the community" do not amount to a denial of due process). Additionally, "[a] prosecutor may comment on and draw reasonable inferences from evidence presented at trial." *Thornburg v. Mullin*, 422 F.3d 1113, 1134 (10th Cir. 2005).

The undersigned finds that the above challenged comments cannot be seen as improperly influencing the jury's decision. Petitioner was charged with five counts of distributing methamphetamine, and at trial there was overwhelming evidence of Petitioner's guilt – including evidence of Petitioner's ability to access and offer illegal drugs easily on numerous occasions. Carey Rouse, an investigator with the District Six District Attorney's Office, testified that on December 3, 1999, he was contacted by Bobby Burton who informed him that methamphetamine could be purchased from Petitioner, and Rouse indicated an interest in working with Burton in conducting such transactions. Tr. at 24, 29. Rouse testified that Burton then made an initial contact with Petitioner on the same date, and Petitioner "fronted," *i.e.*, provided with the expectation of future

payment, Burton approximately one-half ounce of methamphetamine, which Burton turned over to Rouse. Tr. at 29-30. Following the initial buy, Burton made four controlled buys of methamphetamine from Petitioner on December 4, 6, 10, and 21, 1999, with the purchases totaling four and one-half ounces of methamphetamine.[5] Tr. at 30, 34-35. Rouse testified that each time Burton contacted Petitioner, Petitioner never indicated that he could not get the drugs and the amount requested. Tr. at 80. Thus, there was strong evidence of Petitioner's guilt presented at trial. The prosecutor's unobjected to analogous references to Wal-Mart did not urge the jury to convict Petitioner for reasons wholly irrelevant to his own guilt or innocence. The analogy made by the prosecutor, while colorful, was a reasonable inference based on the evidence that Petitioner was able to procure an ample supply of methamphetamine and deliver it on demand.

Under these circumstances, the undersigned finds that these challenged statements do not constitute prosecutorial misconduct and did not violate Petitioner's

---

[5]Rouse testified that prior to the four controlled drug buys Burton was searched, wired with a transmitting device, and Burton was provided cash ("confidential funds") for the methamphetamine purchases; Rouse further testified that the authorities listened to and made recordings of each controlled buy. Tr. at 26, 31-33; *see also* Tr. at 107-08 (admitting into evidence and playing for the jury State's Exhibits 6, 7, 8, and 9 – compact discs containing the recordings of conversations between Burton and Petitioner on December 4, 6, 10, and 21, 1999). Bobby Burton's testimony at trial provided essentially the same information concerning the initial purchase of methamphetamine and the four subsequent controlled buys of the illegal drug from Petitioner. Tr. at 7-23.

Specifically, the record shows that on December 4, 1999, Burton paid Petitioner $500.00 for the half ounce of methamphetamine previously provided to him, and Burton purchased another half ounce of methamphetamine for $500.00. Tr. at 31. In addition, on that date Petitioner "fronted" Burton another half ounce of methamphetamine. *Id.* On December 6, 1999, Burton met with Petitioner and paid the $500.00 owed, purchased another half ounce of methamphetamine for $500.00, and was again "fronted" a half ounce of methamphetamine. Tr. at 34. Burton returned to Petitioner's residence on December 10, 1999, paid the $500.00 owed and asked Petitioner to "front" one ounce of methamphetamine, which he did. Tr. at 35. On Burton's December 21, 1999, visit to Petitioner's residence, Petitioner "fronted" another ounce of methamphetamine to Burton without payment. *Id.*

right to fundamental due process. *See Rojem v. Gibson*, 245 F.3d 1130, (10th Cir. 2001) (finding prosecutor's alleged misconduct in engaging in name calling and attempting to invoke regional bias in capital trial did not influence jury's verdict and did not warrant federal habeas relief, given considerable evidence supporting guilt and aggravating factors).

In his direct appeal brief Petitioner also argued that the prosecutor appealed to societal alarm by incorrectly summarizing the amount of methamphetamine purchased during the five drug buys, thereby raising the jury's concerns about the greater methamphetamine problem as a whole:

> Doesn't seem like much, right? Do you remember the value Carey [Rouse] put on that? Twenty-five thousand (25,000) people get high right there. Twenty-five thousand (25,000). Almost every man, woman and child in the county.

Tr. at 118. The trial court sustained defense counsel's objection and admonished the jury to recall the evidence in reaching their verdict, *id.*, and the prosecutor continued:

> This is a product like no other. It sold for this. It's a trade. Money for drugs. Now it's a business. It keeps the economy going. Wal-Mart keeps the economy going. This is a business, but it is a different kind of business, Ladies, and Gentlemen. Not only is this against the law, but this is something that you, today, get to decide how much you value this business. That is your job today.
>
> . . .
>
> Ladies and Gentlemen, today, simply decide what this is worth, and tell Martin Romero what you think this is worth.

Response, Ex. 1 at 5.

As to these comments, the OCCA found that any error was cured by the trial court's sustaining defense counsel's objection and admonishing the jury. *Id.* The Court

went on to find that the prosecutor's comment that the jury could determine the value of Petitioner's business and tell him it was worth was restricted to the facts of the case and did not incite societal alarm. *Id.*

During his testimony, Investigator Rouse explained that approximately five milligrams of methamphetamine yields one dosage unit of the illegal drug, and therefore the amount of methamphetamine purchased from Petitioner – four and one-half ounces – would yield approximately 25,000 dosage units. Tr. at 105. Even if the prosecutor erroneously attributed the amount of methamphetamine purchased from Petitioner as affecting 25,000 separate individuals rather than limiting his statement to dosage units, it cannot be said that these statements rendered Petitioner's trial fundamentally unfair. As discussed above, the evidence establishing Petitioner's guilt on five charges of distributing illegal drugs was quite strong. Moreover, the trial court sustained defense counsel's objection to one of the comments and further instructed the jury to decide the case on the evidence presented at trial. The jury is presumed to follow its instructions, *Weeks v. Angelone*, 528 U.S. 225, 234 (2000), even when there has been misleading argument. *See Boyde v. California*, 494 U.S. 370, 384 (1990) (explaining that "arguments of counsel generally carry less weight with a jury than do instructions from the court"). Moreover, the prosecutor's statement concerning the jury's ability to determine the "worth" of Petitioner's illegal drug business focused the jury's attention on the facts of the case and cannot be seen as a societal alarm argument that amounted to a denial of due process. *Duckett*, 306 F.3d at 990. Additionally, as previously noted, Petitioner faced a maximum sentence of life imprisonment on each count, and the jury recommended

punishment well within that range. Tr. at 131-32. Thus, the undersigned finds that there is no reasonable probability that the guilt verdict in this case would have been different without the alleged misconduct. Accordingly, Petitioner has failed to show that his trial was rendered fundamentally unfair by these challenged remarks.

B. Arguing Facts Not in Evidence

In his direct appeal Petitioner also alleged that during closing argument that the prosecutor argued information not in evidence at trial. Specifically, he claimed that in attempting to justify why Petitioner was not arrested after the first drug buy and why four more purchases were made from Petitioner, the prosecutor made the following improper statements:

> Not unlike Wal-Mart – I'm just using Wal-Mart as an analogy. I mean, people get supplies from somewhere. Is that what we are talking about here? Should we have stopped it after the first one? Or should Carey [Rouse], doing what is good police work and tactics, look for higher, find out how far this spreads, how far this goes, where are these tentacles. That's good police work. That's what you try to do . Because after all, if all you did was remove this, this is still out there somewhere. And who is bringing this in, supplying this - - -

Tr. at 123. Petitioner also challenged the following statements by the prosecutor as erroneous:

> And I leave it to you all to make the determination as to what you want do, because in our form of government, our system, citizens get to really have an effect one time. They say you get to vote. Election - - national election coming up. You get to do that kind of stuff. You are one of millions. One of millions. Maybe you get what you want, maybe you don't. But guess what, today, you are one of 12. And as a group you decide.
>
> Now, are you going to give him a pass because of his age, because we didn't stop it after the first buy? Is that the point here, Ladies and Gentlemen? The elements, there's the law.
>
> . . .

> Today is your day. Of all the days, today you decide what something is worth to you.

Tr. at 124-25.

The OCCA held that these comments did not misrepresent the facts and that they were based on the evidence, specifically, in response to defense counsel's inquiries concerning why it took so long to bring Petitioner to trial. Response, Ex. 3 at 3. The undersigned agrees that evidence exists to support the prosecutor's statements. On cross-examination defense counsel questioned Investigator Rouse as to why the authorities failed to arrest Petitioner after the first controlled buy on December 4, 1999, continuing instead to provide funds to confidential informant Burton to make more purchases. Tr. at 73-74. Defense counsel continued this theory of unfairness when he argued in closing argument that instead of arresting Petitioner after the first controlled drug buy on December 4, the authorities provided more money to Burton for further purchases of methamphetamine from Petitioner – amounting to a violation of "fair play and substantial justice . . . ." Tr. at 121. Thus, the prosecutor's reference to the authorities' attempt to discover Petitioner's supplier of drugs, invited as it was by defense counsel, easily falls within the wide latitude of argument allowed to prosecutors and cannot be seen as rendering Petitioner's trial fundamentally unfair. Likewise, the subsequent statements made by the prosecutor were appropriately directed toward the jury's assessment of the evidence that had been presented and the length of the sentence that could be imposed upon a finding of guilt. *See Spears v. Mullin*, 343 F.3d 1215, 1247 (10th Cir. 2003) (statement that "justice cries out for [conviction]" did not render trial fundamentally unfair). In light of the overwhelming evidence establishing Petitioner's guilt, the

undersigned finds that these challenged statements did not effect the jury's ability to judge the evidence fairly.

Having reviewed the record in light of Petitioner's allegations in his habeas petition and on direct appeal, the undersigned finds that Petitioner has failed to show that the alleged prosecutorial misconduct so infected his trial with unfairness as to render his conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. at 645. Therefore, the undersigned finds that the OCCA's rejection of Petitioner's claims of prosecutorial misconduct was not contrary to or an unreasonable application of clearly established federal law, as reflected in the decisions of the United States Supreme Court.[6]

**RECOMMENDATION**

For these reasons, it is the recommendation of the undersigned Magistrate Judge that the petition for writ of habeas corpus be denied. In light of this recommendation, it is further recommended that Petitioner's request for appointment of counsel and for an evidentiary hearing, contained in his reply brief, be denied as well. Petitioner is advised

---

[6]To the extent Petitioner seeks habeas relief in the form of sentence reduction or an order to run his sentences concurrently, based on alleged improper comments made by the prosecutor, such claim fails. *See* Petition at 14. As discussed *supra*, Petitioner has failed to show that the challenged comments deprived him of a fair trial. Moreover, sentencing, including whether sentences are to be served concurrently or consecutively, involves the application of state law which is not cognizable on federal habeas review unless a petitioner shows that the challenged sentence is outside the statutory limits or otherwise unauthorized by law. *See Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000). The OCCA rejected Petitioner's claim that prosecutorial misconduct during closing argument resulted in an excessive sentence and specifically found that Petitioner's sentences "are within statutory range and appropriately based on the evidence." Response, Ex. 3 at 3. The maximum sentence available for each count of distribution of methamphetamine was life imprisonment, and thus Petitioner's sentences of thirty years imprisonment on each count are, as found by the OCCA, within the permissible range provided for by Oklahoma law. *See* Okla. Stat. tit. 63, § 2-401(B) (1999). Thus, any challenge to the length of the sentences imposed fails to state a cognizable claim for habeas relief. *Dennis v. Poppel*, *supra*.

of his right to file an objection to this Report and Recommendation with the Clerk of this Court by the 28 day of December, 2006, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 8 day of December, 2006.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE